IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>ALDEN SOUZA-HOLLOWAY,<br><br>　　　　　Defendant. | CR. NO. 19-00007 JMS<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE, ECF NO. 58 |

**ORDER DENYING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE, ECF NO. 58**

**I. INTRODUCTION**

Defendant Alden Souza-Holloway ("Defendant") moves, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release from USP Lompoc, based on a pre-existing medical condition (obesity) and the COVID-19 pandemic. The court determines that Defendant has failed to show extraordinary and compelling reasons to warrant release, and, even if he had, the court would deny the motion based on a consideration of the applicable 18 U.S.C. § 3553(a) factors. Thus, based on the following, the motion is DENIED.

## II. **BACKGROUND**

Defendant is a 35-year-old inmate incarcerated at USP Lompoc, and is scheduled for release from custody on January 26, 2035.  *See* https://www.bop.gov/inmateloc/ (last visited August 10, 2020).

Defendant pled guilty on September 19, 2019 to Counts 1 through 4 of an Indictment charging him with distributing fifty grams or more of methamphetamine (Counts 1 and 2); possessing with intent to distribute fifty grams or more of methamphetamine (Count 3); and being a felon in possession of a firearm (Count 4).  *See* Presentence Investigation Report ("PSR") ¶¶ 2-5, 12, ECF No. 45 at PageID #132, 134.  On February 3, 2020, Defendant was sentenced to a total term of 210 months imprisonment, and a total term of five years of supervised release.  ECF Nos. 50, 51.[1]

Defendant submitted a request for compassionate release to USP Lompoc's Warden on June 3, 2020.  *See* ECF No. 64.  The request was denied on July 6, 2020.  *See id.*  On July 20, 2020, Defendant, represented by counsel, filed the instant motion for compassionate release, seeking a sentence reduction to time

---

[1] Defendant's total offense level 35, Criminal History Category III, resulted in an advisory United States Sentencing Guideline range of 210 to 262 months incarceration.  For counts 1-3, Defendant was sentenced at the bottom of that Guideline range, 210 months.  *See* ECF No. 52.

served, coupled with any appropriate amendment of the conditions of supervised release. ECF No. 58-1 at PageID #247. On August 5, 2020, the Government filed its Response. ECF No. 63. And on August 6, 2020, Defendant filed a supplemental exhibit relating to the exhaustion of his administrative remedies. ECF No. 64.

### III. DISCUSSION

**A.    Legal Standard**

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018,[2] which provides as relevant:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
> . . . .

---

[2] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Thus, the court may reduce Defendant's sentence if: 1) Defendant has exhausted the required administrative remedies; 2) Defendant has shown that "extraordinary and compelling reasons" warrant the reduction; and 3) the reduction is consistent with applicable Sentencing Commission's policy statements. Here, Defendant has submitted evidence showing that he exhausted his administrative remedies. *See* ECF No. 64.

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, provides, as relevant to Defendant, that the court may grant a motion for compassionate release only if, after consideration of the applicable § 3553(a) factors, the court determines that extraordinary and compelling reasons exist to warrant a sentence reduction, the defendant is not a danger to another person or to the community, and a sentence reduction is consistent with the policy statement.

Guideline § 1B1.13 provides three specific examples of extraordinary and compelling reasons for compassionate release—the defendant's terminal medical condition, deterioration of health due to advanced age, and extenuating family circumstances—along with a fourth, catch-all provision granting discretion

to the Bureau of Prisons ("BOP") Director to determine whether other extraordinary and compelling reasons exist.  *See* Guideline § 1B1.13 n.1(A)-(D).  In a detailed analysis, this court previously determined that the "discretion to determine whether 'other' extraordinary and compelling reasons exist granted by [Guideline § 1B1.13 n.1(D)] to the BOP Director applies equally to the court when ruling on motions for compassionate release."  *United States v. Hernandez*, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020).  The court incorporates that analysis here.

**B.     Extraordinary and Compelling Reasons**

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release.  *See, e.g.*, *United States v. Bolden*, 2020 WL 4286820, at *3 (W.D. Wash. July 27, 2020); *United States v. Proudfoot*, 2020 WL 4284128, at *4 (D. Or. July 27, 2020).  Here, Defendant contends that he should be released from custody because:  1) he is severely obese, with a BMI in excess of 40%; and 2) he is at great risk, particularly given the historical numbers of COVID-19 at USP Lompoc.  The court addresses both of these arguments.

As to his first contention, the court agrees that Defendant has an underlying medical condition that places him at an increased risk for severe illness from COVID-19.  According to the Centers for Disease Control and Prevention

("CDC"), individuals with "[o]besity (body mass index [BMI] 30 or higher)" fall into this high risk category. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited August 10, 2020). In short, it is beyond question that Defendant's pre-existing medical condition places him at an increased risk.

Second, although USP Lompoc[3] certainly had a high number of COVID-19 cases in the past, the same is not true at the present time. During the course of the pandemic, out of a total of 726 inmates tested at USP Lompoc, 133 have tested positive for COVID-19. *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited August 10, 2020). But BOP currently reports "confirmed active cases" are limited to 1 inmate and no staff members at USP Lompoc. *Id.* Thus, USP Lompoc simply does not pose the threat it did several months ago.

The court concludes based on the existing evidence that Defendant has failed to demonstrate that extraordinary and compelling reasons warrant

---

[3] USP Lompoc is a medium-security penitentiary with a separate but adjacent minimum-security satellite camp. The USP (that is, the USP alone and not the camp) presently houses 888 inmates. *See* bop.gov/locations/institutions/lom/ (last visited August 10, 2020).

compassionate release. Although Defendant's severe obesity[4] places him at a higher risk if he contracts COVID-19, he has no other medical conditions that place him at an elevated risk.[5] Further, Defendant is 35 years old, and the number of COVID-19 cases at USP Lompoc has dropped dramatically over the past few months.[6] In short, although Defendant has demonstrated that his obesity places

---

[4] Several courts have determined that obesity—alone or paired with hypertension—does not by itself provide adequate grounds for compassionate release. *See e.g., United States v. Lavatai*, 2020 WL 4275258 (D. Haw. July 24, 2020); *United States v. Wilfred*, 2020 WL 4365531, at *5 (E.D. La. July 30, 2020); *United States v. Gordon*, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020); *United States v. Whiteman*, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020; *United States v. Takewell*, 2020 WL 4043060, at *3 (W.D. La. July 17, 2020); *United States v. Wax*, 2020 WL 3468219, at *2-3 (D.N.J. June 25, 2020).

[5] The United States oddly states that Defendant's obesity alone "constitutes an extraordinary and compelling [reason for] release." *See* ECF No. 63 at PageID #329. But the United States Attorney's Office for the District of Hawaii did not take such a position in another case involving a severely obese defendant. *See United States v. Williams*, Cr. No. 06-00079 JMS at ECF No. 2939. Regardless, to the extent the United States suggests that obesity standing alone qualifies as a compelling and extraordinary reason warranting release, the court disagrees. Obesity is certainly an important factor to consider in determining whether extraordinary and compelling reasons warrant release, but there are other important considerations as well. And one of those considerations is the risk that a particular defendant will in fact contract COVID-19 at his or her BOP facility. *See, e.g., United States v. Miller*, WL 4547809, at *4 (E.D. Va. Aug. 6, 2020) (finding that a medical condition warrants release where a defendant shows "both a particularized susceptibility and a particularized risk of contracting the coronavirus."); *United States v. Quinones*, 2020 WL 4529365, at *5 (W.D.N.Y. Aug. 6, 2020).

[6] USP Lompoc is separate from FCI Lompoc. FCI Lompoc previously was a COVID-19 "hot spot" with a significant number of infections. Like USP Lompoc, FCI Lompoc has greatly reduced its cases, with, as of August 10, 2020, 1 inmate and 1 staff member with "confirmed active cases." *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited August 10, 2020). *See also* Declaration of Lawrence Cross, ECF No. 63-1.

him at a higher risk if he contracts COVID-19, he has failed to show that at the present time USP Lompoc is an unsafe facility.

And to the extent that Defendant makes a more generalized argument regarding the risk of contracting COVID-19 in a BOP facility, the court disagrees. *See, e.g.*, *United States v. Drummondo-Farias*, ___ F. Supp. 3d ___, 2020 WL 2616119, at *5 (D. Haw. May 19, 2020) ("Additionally, '[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement[.]'") (quoting *United State v. Eberhart*, ___ F. Supp. 3d ___, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)).

## C.  Section 3553(a) Factors

Even if Defendant had demonstrated the required extraordinary and compelling reasons exist to justify compassionate release, the court would deny the motion based on a consideration of the § 3553(a) factors.

As relevant to this case, the § 3553(a) factors include: 1) the nature and circumstances of the offense and the history and characteristics of the defendant;[7] and 2) the need for the sentence imposed: (a) to reflect the seriousness

---

[7] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including his rehabilitation while in custody. *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(1)-(2).  And under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).

Defendant's offense conduct, as set forth in the PSR, is disturbing. For example, on October 30, 2018, Defendant arranged to sell two ounces of methamphetamine to a confidential source and undercover officer ("UC").  During the course of the transaction, Defendant "sent a 14-year old female . . . from his car to the UC's vehicle to deliver the drugs and receive payment."  PSR ¶ 15, ECF No. 45 at PageID # 134.  On November 6, 2018, Defendant sold the UC 222 grams of methamphetamine.  Next on January 5, 2019, Defendant was arrested after a traffic stop and found to possess over 500 grams of methamphetamine and a shotgun with ammunition in the truck of the vehicle.  Defendant admitted that he possessed the shotgun "for protection, due to his drug distribution activities."  PSR ¶¶ 16-18, ECF No. 45 at PageID #134-35.  During a post-arrest statement, Defendant

admitted that he "usually received a minimum of 2 pounds of methamphetamine from his cousin at a time, on consignment." PSR ¶ 18, ECF No. 45 at PageID # 135.

These facts are troubling—Defendant admitted that he was a large-scale trafficker, and the evidence showed that he used a 14-year-old minor to assist him in the distribution of methamphetamine and possessed a firearm to protect his drug trade. Further, Defendant still has a significant portion of his sentence to serve—he is not scheduled for release from custody until January 26, 2035, leaving over 14 years of his sentence to serve. *See* https://www.bop.gov/inmateloc/ (last visited August 10, 2020).[8] Indeed, the court sentenced Defendant to his 210-month term just over six months ago. ECF No. 50. Reducing Defendant's sentence to time served, given the nature of his offenses, would severely undermine the goals of sentencing set forth in § 3553(a)(2).

---

[8] When evaluating the § 3553(a) factors, many district courts have considered the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release. *See, e.g.*, *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020); *United States v. Bogdanoff*, __F. Supp. 3d__, 2020 WL 2307315, at *6 (E.D. Pa. May 8, 2020); *United States v. Moskop*, 2020 WL 1862636, at *1-2 (S.D. Ill. Apr. 14, 2020); *United States v. Farmer*, 2020 WL 4057550, at *2 (N.D. Ohio July 20, 2020); *United States v. Steffey*, 2020 WL 3840558, at *1 (D. Nev. July 8, 2020).

In sum, the court finds that Defendant has not established the requisite extraordinary and compelling reasons to warrant compassionate release, and, even if he did, the court would deny the motion based on the relevant § 3553(a) factors.

## IV. **CONCLUSION**

For the foregoing reasons, Defendant's motion for compassionate release, ECF No. 58, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 10, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Souza-Holloway,* Cr. No. 19-00007 JMS, Order Denying Defendant's Motion for Compassionate Release, ECF No. 58